UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DENISE S.,

                Plaintiff,                        **DECISION AND ORDER**

      v.

                                   1:21-CV-01008 EAW

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

## INTRODUCTION

Represented by counsel, plaintiff Denise S. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 11; Dkt. 14), and Plaintiff's reply (Dkt. 15). For the reasons discussed below, Plaintiff's motion (Dkt. 11) is granted to the extent that the matter is remanded for further administrative proceedings and the Commissioner's motion (Dkt. 14) is denied.

## BACKGROUND

Plaintiff protectively filed her application for DIB on February 27, 2017.  (Dkt. 6 at 156, 386-91).[1]  In her application, Plaintiff alleged disability beginning December 31, 2014.  (*Id.* at 21, 367).  Plaintiff's application was initially denied on June 20, 2017.  (*Id.* at 156, 188-97).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Bryce Baird on May 29, 2019, in Buffalo, New York.  (*Id.* at 156, 91-139).  On August 16, 2019, the ALJ issued an unfavorable decision.  (*Id.* at 156-71).

Plaintiff requested review by the Appeals Council and, on June 9, 2020, the Appeals Council entered an order vacating the hearing decision and remanding the matter to the ALJ.  (*Id.* at 178-81).  In its order, the Appeals Council concluded:

> The hearing decision does not contain an adequate evaluation of the treating source opinion of Richard Jimenez, LMHC.  The decision gives his opinion little weight, and supports that by stating that the only treatment records from Mr. Jimenez were from one evaluation on December 16, 2016 (Hearing Decision, page 14).  However, additional records from Mr. Jimenez were submitted by [Plaintiff's] representative on October 4, 2018 (11 pages).  These records were not exhibited or considered in the decision, as required by HALLEX I-2-1-15, HALLEX I-2-1-20, and I-2-6-58.  Further consideration is warranted.
> The hearing decision does not contain an evaluation of [Plaintiff's] obesity in accordance with SSR 19-2p.  A review of the record reflects multiple BMI findings of 30.0 or higher (Exhibits 11F, page 5; 9F, page 14; 16F, page 7;

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

and 19F, page 9).  Further evaluation as to whether [Plaintiff's] obesity is a severe impairment is warranted. (Id. at 137-38).

(*Id.* at 180).

On October 16, 2020, the ALJ held a second hearing by telephone.  (*Id.* at 21, 49-90).  On November 23, 2020, the ALJ issued an unfavorable decision. (*Id.* at 21-40).  Plaintiff again requested Appeals Council review, and her request was denied on July 8, 2021, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 7-11).  This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he

deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id.* § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id.* § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

## I.    The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520.  Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act on June 30, 2019.  (Dkt. 6 at 23).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity during the period from her alleged onset date of December 31, 2014, through her date last insured of June 30, 2019.  (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: post-traumatic stress disorder ("PTSD"), major depressive disorder, and anxiety disorder with non-severe alcohol condition.  (*Id.* at 24).  The ALJ further found that Plaintiff's obesity, hypertension, recent onset diabetes, and fibromyalgia were non-severe.  (*Id.* at 24-29).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 29). The ALJ particularly considered the criteria of Listings 12.04, 12.06, and 12.15 in reaching his conclusion. (*Id.* at 29-30).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with the following additional limitations:

> [Plaintiff] can lift, carry, push and pull occasionally 10 pounds, frequently 5 pounds; sit for up to 6 hours in an 8-hour day; stand or walk for up to 2 hours in an 8-hour day; occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel and crouch; never crawl; never be exposed to hazards such as unprotected heights and moving machinery. In addition, work limited to simple, routine tasks, can be learned after a short demonstration or within 30 days; work allowing [Plaintiff] to be off task 5% of the workday in addition to regularly scheduled breaks; occasional interaction with the public and co-workers and work that does not require teamwork, such as on a production line.

(*Id.* at 30-31).

At step four, the ALJ found that Plaintiff was unable to perform past relevant work. (*Id.* at 38).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of document preparer, assembler, and bench hand. (*Id.* at 39). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 40).

## II.   Remand for Further Administrative Proceedings is Required

Plaintiff asks the Court to vacate the ALJ's decision and remand this matter to the Commissioner, arguing that the ALJ erred: (1) in his determination that Plaintiff's fibromyalgia is not a severe impairment; (2) in the assessment of the opinions of treating providers Donald Robinson, M.D., and Heather Milliron, ANP; and (3) in the evaluation of the opinion of Plaintiff's treating licensed mental health counselor, Richard Jimenez.  In response, the Commissioner argues that substantial evidence supports the ALJ's RFC and that the ALJ properly weighed the medical evidence before him.  As further explained below, the Court agrees that remand for further proceedings is necessary on the issue of the evaluation of the fibromyalgia-related evidence.

### A.   Evaluation of Plaintiff's Fibromyalgia and Assessment of Related Medical Evidence

Plaintiff first argues that the ALJ erred in his evaluation of whether fibromyalgia was a severe medically determinable impairment at step two of the sequential analysis. (Dkt. 12 at 15-18).  She contends, and the Court agrees, that the error at step two then affected the evaluation of related medical evidence in the determination of Plaintiff's RFC and warrants remand.

#### 1.   Step Two Evaluation of Fibromyalgia

"An impairment is 'severe' if it 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Eralte v. Colvin*, No. 14 Civ. 1745(JCF), 2014 WL 7330441, at *10 (S.D.N.Y. Dec. 23, 2014) (quoting 20 C.F.R. § 404.1520(c)).  "When the parties disagree over the effect of the ALJ's failure to include a condition at step two, resolution of this issue comes down to a question of whether there was substantial evidence

to support the ALJ's conclusion that [the omitted condition] should not be included as a severe impairment." *Id.* (quotations omitted) (alteration in original). "[T]he severity prong is intended as a *de minimis* standard to screen out only those claimants with 'slight' limitations that 'do not significantly limit any basic work activity.'" *Vicari v. Astrue*, No. 1:05-cv-4967-ENV-VVP, 2009 WL 331242, at *3 (E.D.N.Y. Feb. 10, 2009) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987)).

For the impairment of fibromyalgia, "a growing number of courts, including our own, have recognized that fibromyalgia is a disabling impairment and that 'there are no objective tests which can conclusively confirm the disease.'" *Green–Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (quoting *Preston v. Sec. of Health & Human Servs.*, 854 F.2d 815, 818 (6th Cir. 1988)) (citation omitted). "[Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia." *Cabibi v. Colvin*, 50 F.Supp.3d 213, 233, (E.D.N.Y. 2014) (alteration in original) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)). "In stark contrast to the unremitting pain of which [fibromyalgia] patients complain, physical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *Lisa v. Sec. of Dep't of Health & Human Servs.*, 940 F.2d 40, 44 (2d Cir. 1991) (quoting *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 817-18 (6th Cir. 1988)).

Social Security Ruling ("SSR") 12-2p sets forth the following requirements for finding that fibromyalgia is a medically determinable impairment: (1) a physician has

diagnosed fibromyalgia; (2) the physician has provided evidence described either by the 1990 American College of Rheumatology (ACR) criteria ("1990 ACR criteria") or the 2010 ACR Preliminary Diagnostic Criteria ("2010 ACR criteria"); and (3) the physician's "diagnosis is not inconsistent with other evidence in the person's case record."  SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012).

The 1990 ACR criteria requires evidence of (1) a history of widespread pain in all quadrants of the body that has persisted at least three months, (2) at least eleven positive tender points on physical examination, and (3) evidence that other disorders that could cause the symptoms or signs were excluded, whereas the 2010 ACR criteria requires (1) a history of widespread pain in all quadrants of the body that has persisted at least three months, (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions (especially manifestations of fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome), and (3) evidence that other disorders that could cause these repeated manifestations were excluded. *Id.*; *see also Nicole P. v. Comm'r of Soc. Sec.*, No. 20-CV-6576-MWP, 2022 WL 2533346, at *4 (W.D.N.Y. July 7, 2022).  An ALJ is required to assess both the 1990 ACR criteria and the 2010 ACR criteria before concluding that a claimant does not have the medically determinable impairment of fibromyalgia.  *Wilma M.S. v. Comm'r of Soc. Sec.*, No. 20-CV-6383-LJV, 2022 WL 138537, at *4 (W.D.N.Y. Jan. 14, 2022) ("[B]ecause there are two sets of criteria that might establish a medically determinable impairment of fibromyalgia, an ALJ must analyze both before deciding that a claimant does not suffer from that impairment."); *Joseph Y. v. Comm'r of Soc. Sec.,* No. 20-CV-319-LJV, 2022 WL

125821, at *2 (W.D.N.Y. Jan. 13, 2022) ("Therefore, before deciding that a claimant does not have fibromyalgia, an ALJ must analyze both the 1990 and the 2010 criteria.").

Here, while acknowledging that Plaintiff was diagnosed with fibromyalgia, the ALJ determined that it was non-severe and stated that it lacked the medical support necessary to qualify as a severe impairment under the requirements of SSR 12-2p.  (Dkt. 6 at 24).  Specifically, he wrote: "[s]imply stated, there is no evidence of exclusion of other conditions, no evidence of tender points, and no findings of pain in all four quadrants." (*Id.*).

Indeed, Plaintiff concedes that the record does not contain evidence of at least 11 tender points in satisfaction of the requirements of the 1990 ACR criteria.  But she contends that the ALJ erred in not assessing whether the evidence of record could nevertheless satisfy the 2010 ACR criteria, arguing that she does in fact meet its requirements because the evidence demonstrates that she has a history of widespread pain in all four quadrants; the record demonstrates repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions; and other disorders can be excluded.

The Court agrees that the ALJ's decision does not make clear that he considered both the 1990 and 2010 ACR criteria.  The decision only expressly mentions the elements of the 1990 ACR criteria and does not contain any reference to an assessment of whether there was evidence of repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, as provided in the 2010 ACR criteria.  As noted, failure by an ALJ to consider both sets of criteria is error.  *Wilma M.S.*, 2022 WL 138537, at *4 ("The ALJ's second error was not analyzing the 2010 criteria after he determined that

Wilma did not have a medically determinable impairment of fibromyalgia under the 1990 criteria.  As this Court has found, because there are two sets of criteria that might establish a medically determinable impairment of fibromyalgia, an ALJ must analyze both before deciding that a claimant does not suffer from that impairment."); *Cooper v. Comm'r of Soc. Sec.*, No. 17-CV-1058-MJR, 2019 WL 1109573, at *4 (W.D.N.Y. Mar. 11, 2019) (remanding where the ALJ focused on "tender points" in rejecting plaintiff's fibromyalgia as a medically determinable impairment but "appeared to overlook part of the diagnostic criteria set forth in SSR 12-2p" in the 2010 ACR criteria and it was "not clear from the ALJ's decision whether she considered this alternative diagnostic criteria"); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *7 (N.D.N.Y. Feb. 13, 2019) ("Therefore, the ALJ's decision does not suggest a proper analysis of the medical determinability of fibromyalgia under SSR 12-2p because it does not appear that the ALJ considered plaintiff's fibromyalgia under both sections of SSR 12-2p.").

The Commissioner argues that the evidence of record does not satisfy either the 1990 ACR criteria or the 2010 ACR criteria.  Specifically, the Commissioner contends that Plaintiff fails to establish the first requirement that she have a history of widespread pain in all quadrants of her body that has persisted for more than three months.  But contrary to the ALJ's conclusion that there were "no findings of pain in all four quadrants," the record does appear to contain evidence that reflects a history of Plaintiff's body-wide pain complaints.  (*See, e.g.,* Dkt. 9 at 617 ("Plaintiff presents with fatigue with fibromyalgia, with depression and diffuse pain"); *id.* at 619 ("Plaintiff presents with fatigue; with fibromyalgia and with diffuse pain"); *id.* at 636 ("The claimant states that she was

diagnosed with fibromyalgia a few years ago.  She says her symptoms include chronic body wide pain.  She states that it is not just one joint, but her entire body that hurts."); *id.* at 649 (Plaintiff "reports that she has difficulty with [activities of daily living] due to chronic pain issues"); *id.* at 667 ("Denise continues to experience waxing and waning fatigue and generalized pain."); *id.* at 669 ("Denise describes a many year history of generalized achy pain and fatigue.  . . . She's bothered with waxing and waning diffuse achy pain involving the arms, neck, back, and legs"); *id.* at 713 ("depressed due to chronic pain"); *id.* at 756 ("constant pain with fibromyalgia"); *id.* at 774 ("Denise is a 44 year old woman who presents with diffuse myofascial pain . . . consistent with fibromyalgia"); *id.* at 923 ("Fibromyalgia. . . shoulders, back and legs the worst"); *id.* at 1004 ("Fibromyalgia. . . shoulders, back and legs the worst"); *id.* at 1005 ("Reports . . . joint pain, muscle pain, stiffness, trouble walking and weakness"); *see also Ponce v. Comm'r of Soc. Sec.*, No. 21-CV-2451 (PKC), 2022 WL 4660549, at *3 (E.D.N.Y. Sept. 30, 2022) (remanding case where "it is unclear from the record how the ALJ concluded that Plaintiff 'did not complain of pain in all four quadrants' for 'at least 3 months' when, once again, Plaintiff repeatedly reported that she suffered pain throughout her body").

The Commissioner also disputes whether Plaintiff has established the second element of the 2010 ACR criteria, not discussed by the ALJ, that requires the presence of repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions.[2]  While acknowledging that the record reflects Plaintiff's complaints of anxiety,

_____

[2]    SSR 12-2p highlights "manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome" as especially important examples, but also recognizes the "somatic symptoms"

depression, and fatigue, the Commissioner argues that the record is absent of evidence demonstrating any other alleged signs or symptoms.  But in addition to her conditions of anxiety, depression, and fatigue, the record contains references to Plaintiff's complaints of among other things: non-restorative sleep/insomnia (Dkt. 6 at 610, 613, 642, 735, 901); memory issues (*id.* at 642); muscle pain (*id.* at 636, 1005); joint pain (*id.* at 783, 990); heartburn (*id.* at 617-18, 620, 711, 714, 757, 777, 797, 917, 923, 932, 1005); and gastroesophageal reflux disease (*id.* at 643, 650, 918, 924, 936, 1009).  In light of this evidence, the ALJ's failure to even address this element of the 2010 ACR criteria was error.

As to the exclusion of other disorders, there does not appear to be any record of Plaintiff being diagnosed with other disorders that may have symptoms or signs that are the same or similar to those resulting from fibromyalgia, including rheumatologic disorders, myofacial pain syndrome, polymyalgia rheumatica, chronic Lyme disease, and cervical hyperextension-associated or hyperflexion-associated disorders.  While specific evidence demonstrating that these other disorders were explicitly considered and excluded as part of a fibromyalgia diagnosis has not been identified, the record contains ample evidence of testing and treatment of Plaintiff's fibromyalgia symptoms that go beyond a

---

of "muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms," and the "co-occurring conditions" of "irritable bowel syndrome or depression, . . . anxiety disorder, chronic fatigue syndrome, irritable bladder syndrome, interstitial cystitis, temporomandibular joint disorder, gastroesophageal reflux disorder, migraine, or restless leg syndrome."  SSR 12-2p, at *3, n.9-10.

mere diagnosis and serve to at least warrant a fuller discussion of this element of the SSR 12-2p criteria as well.  *See Diaz v. Comm'r of Soc. Sec.*, No. 18-CV-6224P, 2019 WL 2401593, at *5 (W.D.N.Y. June 7, 2019) (remanding where "the record reveals some evidence that her doctors performed tests to rule out other disorders that might have caused her symptoms" even though the record did not reflect specific evidence that other disorders that could cause these symptoms were excluded); *Monique Danielle W. v. Comm'r of Soc. Sec.*, No. 5:18-CV-184, 2019 WL 2358529, at *6 (N.D.N.Y. June 4, 2019) (finding on the issue of exclusion of other disorders that "[a]t the very least, these imaging studies and the referral to rheumatology indicate that Monique's providers made some attempt [to] track down an explanation for her pain and tenderness beyond just relying on a 'diagnosis by repetition.'").

To be clear, the Court takes no position as to whether or not Plaintiff's fibromyalgia meets the standard to qualify as a severe impairment.  Rather, because the ALJ did not expressly analyze fibromyalgia under both of the appropriate legal standards and there exists evidence in the record to contradict at least some of the ALJ's conclusions reached at this step, the Court finds error in the ALJ's step two determination.  *Kirsten B. v. Comm'r of Soc. Sec.*, No. 20-CV-1275-FPG, 2022 WL 2662968, at *3 (W.D.N.Y. July 11, 2022) ("The ALJ may ultimately be correct that Plaintiff's claimed fibromyalgia is not a medically determinable impairment, but a more explicit analysis of the relevant criteria is required. . . .  Such an analysis would have been useful in this case, because there is at least some evidence to support Plaintiff's claim."); *Brandy L. v. Kijakazi*, No. 3:20-CV-1127 (DJS), 2022 WL 675709, at *4 (N.D.N.Y. Mar. 7, 2022) ("Given this, the ALJ failed to

fully consider the impact of Plaintiff's fibromyalgia.  At the very least, the ALJ's decision is insufficient to demonstrate that the proper analysis was conducted." (citations omitted)).

The Commissioner argues that any error in identifying Plaintiff's fibromyalgia as a severe impairment was harmless because the ALJ found other severe impairments at step two and continued through the remainder of the sequential analysis.  Where an ALJ fails to include a condition as a severe impairment, such failure is harmless if the ALJ proceeded through the sequential analysis taking the plaintiff's complaints of pain into account when making his RFC determination.  *Snyder v. Colvin*, No. 5:13-cv-585(GLS/ESH), 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014) ("[W]hen an administrative law judge identifies some severe impairments at Step 2, and then proceeds through sequential evaluation on the basis of combined effects of all impairments, including those erroneously found to be non severe, an error in failing to identify all severe impairments at Step 2 is harmless.") (emphasis in original).  "[W]hen functional effects of impairments erroneously determined to be non-severe at Step 2 are, nonetheless, fully considered and factored into subsequent residual functional capacity assessments, a reviewing court can confidently conclude that the same result would have been reached absent the error."  *Id.*[3]

Because, as explained below, the error at step two seemingly also affected the ALJ's assessment of the medical opinion evidence of record, the Court cannot conclude that any step two error was harmless.

---

[3]     Notably, the step two harmless error doctrine only applies to impairments that are deemed by the ALJ to be non-severe, and not to impairments that an ALJ finds not medically determinable. *See Penny Lou S v. Comm'r of Soc. Sec.*, No. 2:18-cv-213, 2019 WL 5078603, at *8 (D. Vt. Oct. 10, 2019) ("[T]he step-two harmless error doctrine is

### 2.   Assessment of Medical Opinion Evidence

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [her] decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted)).  In other words:

> An ALJ is prohibited from "playing doctor" in the sense that an ALJ may not substitute [her] own judgment for competent medical opinion.  This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence

---

inapplicable to a determination that an impairment is not medically determinable."); *Diaz*, 2019 WL 2401593, at *5 ("Although the Commissioner is correct that [a]n error at step two may be harmless if the ALJ identifie[d] other severe impairments at step two, proceed[ed] through the remainder of the sequential evaluation process and specifically consider[ed] the 'nonsevere' impairment during subsequent steps of the process, the ALJ's error in this case stemmed not from a severity conclusion, but from the conclusion that Diaz's fibromyalgia was not a medically determinable impairment based on the guidance in SSR 12-2p." (quotation and citations omitted)).

In this case, the ALJ's decision refers to Plaintiff's fibromyalgia both as "non-severe" and as not medically determinable, so it is not abundantly clear whether the harmless error standard should apply.  (Dkt. 6 at 24, 29 (*compare* "[T]herefore, I find fibromyalgia to be non-severe" *with* "The claimant is diagnosed as having fibromyalgia; however, this diagnosis is not accompanied by the medical records necessary to establish it as a medically determinable impairment pursuant to the requirements of SSR 12-2 during the period in issue" and "In addition, there is no indication that the claimant exhibits a medically determinable impairment in the form of fibromyalgia during the period in issue despite the representative assertions since SSR 12-2p requirements are not satisfied and the record merely contains reports of her allegations of pain.").  Because this matter is being remanded in any event, the Court need not resolve the potential inconsistency at this time.

or that the ALJ has erred by failing to develop the record with a medical
opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec.

1, 2017) (quotation and citation omitted).

In assessing a disability claim, an ALJ must consider and weigh the various medical

opinions of record.  Pursuant to the Commissioner's regulations:

> the ALJ must consider various factors in deciding how much weight to give
> to any medical opinion in the record, regardless of its source, including: (i)
> the frequency of examination and the length, nature and extent of the
> treatment relationship; (ii) the evidence in support of the . . . physician's
> opinion; (iii) the consistency of the opinion with the record as a whole; (iv)
> whether the opinion is from a specialist; and (v) other factors brought to the
> Social Security Administration's attention that tend to support or contradict
> the opinion.

*Pike v. Colvin*, No. 14-CV-159-JTC, 2015 WL 1280484, at *5 (W.D.N.Y. Mar. 20, 2015)

(quotation and alterations omitted).

Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to

apply the treating physician rule, under which a treating physician's opinion is entitled to

"controlling weight" if it is "well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in [the]

case record[.]"  20 C.F.R. § 404.1527(c)(2).  Under the treating physician rule, if the ALJ

declines to afford controlling weight to a treating physician's medical opinion, he or she

"must consider various factors to determine how much weight to give to the opinion."

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted).

An ALJ's failure to explicitly apply the requisite factors is a "procedural error."  *Estrella*

*v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quotation omitted).  However, such error is

- 17 -

harmless if "a searching review of the record" confirms "that the substance of the treating physician rule was not traversed." *Id.* (quotations omitted).

Whatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons"' for the weight given to a treating source opinion." (quoting *Halloran*, 362 F.3d at 32)). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific. . . ." *Harris*, 149 F. Supp. 3d at 441 (internal quotation marks omitted).

On September 27, 2018, Dr. Robinson and ANP Milliron co-signed a medical source statement. (Dkt. 6 at 729-32). In it, they noted that Plaintiff had been treated by them for four years and had diagnoses of adjustment disorder, anxiety, fibromyalgia, hypertension, and heartburn. (*Id.* at 729). They opined that Plaintiff would likely be off task greater than 25% of a typical workday due to her symptoms that interfere with the attention and concentration needed to perform even simple work related tasks; she would be able to maintain attention and concentration for less than five minutes before requiring a break due to pain or medication side effects; she would likely be absent from work at least four days per month due to her impairments or treatment; and she could occasionally lift ten pounds, but never carry ten pounds due to pain and exhaustion arising from her fibromyalgia diagnosis and accompanying conditions, including anxiety and depression.

(*Id.* at 729-30).  Dr. Robinson and ANP Milliron opined that Plaintiff's fatigue and physical

exhaustion require her to recline for much of the day and would require an option to sit and

stand at will throughout the workday.  (*Id.* at 730).  And when sitting, they indicated that

Plaintiff's leg would require elevation and she may require the use of a cane or other

assistive device to ambulate effectively.  (*Id.*).

The ALJ explained his assessment of Dr. Robinson and ANP Milliron's opinions as

follows:

> I give little weight to the opinion of Dr. Robinson, as his treatment records
> do not support the extensive limitations (Exhibit 12F, pages 5-8).  For
> instance, the first mention of fibromyalgia was on March 8, 2016, which
> notes [Plaintiff] presents with fibromyalgia, however, Dr. Robinson did not
> diagnose fibromyalgia (Exhibit 1F, page 13).  Dr. Robinson notes [Plaintiff]
> has balance issues but also says she can work continuously at unprotected
> heights (Exhibit 12F, page 8).  The limitations are related to fibromyalgia,
> but fibromyalgia is not properly diagnosed (SSR 12-2p).  I have, however,
> considered all the objective evidence to limit [Plaintiff] to sedentary, even if
> fibromyalgia itself is not an acceptable diagnosis.

(Dkt. 6 at 35).

As is clear, the ALJ gave little weight to the opinions of Dr. Robinson and ANP

Milliron, in part, because the limitations they advocate for Plaintiff relate to fibromyalgia

and he found that "fibromyalgia is not properly diagnosed," and "fibromyalgia itself is not

an acceptable diagnosis," citing to SSR 12-2p.  As a result, the ALJ carried any potential

error from step two into his assessment of the medical opinion evidence from Plaintiff's

treating providers.  In other words, not only does the ALJ's decision leave unclear whether

he properly considered both the 1990 and 2010 ACR criteria at step two and the record

contains evidence that potentially contradicts the findings made at that step, but because

he then proceeded to rely on those step two conclusions to provide less weight to the

opinions of Dr. Robinson and ANP Milliron, any error at step two infected the RFC determination. And such an error cannot be considered harmless here, particularly since Dr. Robinson and ANP Milliron were the only treating providers of record opining on the limitations resulting from Plaintiff's fibromyalgia. *Rosemary B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-241 (ATB), 2022 WL 11130736, at *6 (N.D.N.Y. Oct. 19, 2022) ("Since this court finds that the ALJ's error at step two necessarily affected the remainder of his analysis, remand for further administrative proceedings is required."); *see also Feliciano v. Comm'r of Soc. Sec.,* No. 21-CV-1800 (AMD), 2022 WL 4646496, at *4 (E.D.N.Y. Sept. 30, 2022) ("Although the Commissioner's factual determinations are binding when they are supported by substantial evidence, a court will not defer to the Commissioner's decision '[w]here an error of law has been made that might have affected the disposition of the case.'" (quoting *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004)). Remand is accordingly warranted.

### B.    Remaining Argument

As set forth above, Plaintiff has identified an additional reason why she contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach this argument. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015

WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

### CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 11) is granted to the extent that the matter is remanded for further administrative proceedings.  Defendant's motion for judgment on the pleadings (Dkt. 14) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: January 5, 2023
        Rochester, New York

- 21 -